UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Anita Miller,<br><br>                *Plaintiff*,<br><br>vs<br><br>The Mayo Clinic; a Minnesota non-profit corporation,<br><br>                *Defendant*. | Court File No. 22-cv-1405<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Anita Miller ("Plaintiff Miller") makes the following allegations for her complaint against the Defendant Mayo ("Defendant Mayo").

### INTRODUCTION

1.  In October, 2021, Defendant Mayo mandated that all employees receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate"). Many of Defendant Mayo's employees, including Plaintiff Miller, objected to receiving these vaccinations because of their sincerely-held religious beliefs. Plaintiff Miller filed a request for a religious exemption with Defendant Mayo to be exempt from taking the Covid-19 vaccination. Defendant Mayo denied the requested religious exemption. In addition, Defendant Mayo failed to undertake an individual interactive process as required for evaluating religious exemption requests. Finally, only a couple of months after terminating Plaintiff Miller, Defendant Mayo reversed part of its vaccine mandate, demonstrating that the terminations were unnecessary or a pretext.

2. Based on Defendant Mayo's implementation of the Vaccine Mandate and its refusal to grant Plaintiff Miller her request for a religious exemption, Plaintiff Miller brings claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA") based on Defendant Mayo mandating a vaccine, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

## JURISDICTION AND VENUE

3. Plaintiff Miller has fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4. This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiff Miller's state law claims pursuant to 28 U.S.C. §1367.

5. This Court has personal jurisdiction over Defendant Mayo as it is a non-profit corporation operating in and located in the State of Minnesota.

6. Defendant Mayo is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

7. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and Defendant Mayo conducts business in the State of Minnesota.

## PARTIES

8. Plaintiff Miller is a former employee of Defendant Mayo.

9. Defendant Mayo is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

10. Plaintiff Anita Miller is 51 years old and a Minnesota resident who worked as a registered nurse for Mayo for over 21 years. Most recently she worked on the neonatal transport team. Plaintiff Miller requested a religious exemption from the Vaccine Mandate and then a request for reconsideration, which were both denied.

11. Plaintiff Miller is a Christian and her religious exemption was based on opposition to the use of vaccines produced with or tested by aborted baby cells. She is Christian and has determined she cannot, consistent with her conscience, take the Covid-19 vaccine. She is a believer in Jesus Christ, Lord and Savior, believes the tenants of the Holy Scripture that whatever she does in life will be called into account, including what she does to her body, made in the image of God, and to do otherwise is a sin against God.

12. Defendant Mayo terminated Plaintiff Miller's employment on January 3, 2022 based on her refusal to take the Covid-19 vaccine. Plaintiff Miller filed a charge with the EEOC and received a Right to Sue letter from EEOC dated February 23, 2022.

13. Plaintiff Miller has had glowing positive job performance reviews, even being called a "very well respected member of the neonatal transport nursing team."

Even after the Covid-19 Pandemic was underway and Plaintiff Miller had worked for nearly one and one-half years while unvaccinated, she was called an "incredible transport nurse," a "great resource to her peers," and that she has a "wealth of knowledge," and is "amazing."

## FACTS

14. During the pandemic in 2020 and 2021, Plaintiff Miller was asked to work her own and frequently additional shifts in order to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic. At that time, Plaintiff Miller, while unvaccinated, continued to provide patient care while employed by Defendant Mayo.

15. Defendant Mayo recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated—and on September 28, 2021 the President and CEO of Mayo Clinic (Gianrico Farrugia, M.D.), along with the Chief administrative Officer (Jeff Bolton) wrote to Mayo's employees:

> "*On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues. We truly appreciate you and your efforts to live our values every day.*"

16. However, just two weeks later, Defendant Mayo implemented its Vaccine Mandate. The Vaccine Mandate stated that "all Mayo Clinic staff members" must get vaccinated with one of the Covid-19 vaccines or else the employees would be considered "noncompliant," later "placed on unpaid leave," and eventually "terminated." The Vaccine Mandate applied to "all staff, including remote workers," of which Defendant

4

Mayo had many. Recognition of the important work performed by the unvaccinated employees disappeared only two weeks after being celebrated.

17. The Vaccine Mandate was announced on October 13, 2021. Defendant Mayo's policy required all staff to become vaccinated against Covid-19, and that if they were not already vaccinated or only partially vaccinated, they would have to become vaccinated or be approved for a medical or religious exemption by December 3, 2021, or be terminated.

18. On October 25, 2021, Defendant Mayo sent a communication outlining the steps to comply with the Covid-19 vaccination policy. Beginning on December 3, 2021, Defendant Mayo issued Final Written Warnings to noncompliant staff with instructions on complying by January 3, 2022, or be terminated.

19. Defendant Mayo announced that there were both medical and religious exemptions from the Vaccine Mandate, and did allow for employees to apply for "*medical and religious exemptions*" to the Vaccine Mandate, and even provided "*forms*" for such applications.

20. However, what Defendant Mayo gave with one hand, it took away with the other by proclaiming that "*it is anticipated that a small number of staff will have qualifying religious exemption*." (emphasis added) It further wrote: "*applications for a religious exemption will be denied if the panel determines the applicant does not demonstrate a sincerely held religious belief*, (emphasis added). Further, Defendant Mayo declared: *"[o]nly a small number of staff are expected to qualify for a religious exemption*." (emphasis added).

5

21. Defendant Mayo thus put itself in the position of deciding the sincerity of the religious belief of the Plaintiffs and, whether a belief was "religious" or not.

22. Defendant Mayo also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The only absolute medical contraindications to vaccination for COVID-19 are severe or immediate reaction to a prior does of the vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles*." Other medical conditions were preemptively discounted or disregarded.

23. The pre-determined limitations on its religious and medical exemption policies were supposed to be kept in the dark, as Defendant Mayo wrote to the high-ranking personnel who were to implement the policies: "*This message is intended for regional supervisors, managers and other leaders, so please do not share broadly*." (emphasis added).

24. Consistent with Defendant Mayo's instructions that employees could request a religious exemption to the Covid-19 Mandate, Plaintiff Miller completed her request for a religious exemption on or about October 30, 2021.

25. Plaintiff Miller is a Christian and her religious exemption was based on opposition to the use of vaccines produced with or tested by aborted baby cells. She is Christian and has determined she cannot, consistent with her conscience, take the COVID-19 vaccine. She is a believer in Jesus Christ, Lord and Savior, believes the tenants of the Holy Scripture that whatever she does in life will be called into account, including what she does to her body, made in the image of God, and to do otherwise is a sin against God.

6

26. Plaintiff Miller's Christian beliefs and her opposition to abortion have been affirmed through her work at Defendant Mayo, including an incident when a premature baby, born at 18-19 weeks, lived for approximately 5-10 minutes while she rocked the little boy in her arms before he succumbed. Plaintiff Miller knew she could not participate in, or cooperate in the evil of abortion, where cells and organs are harvested and sold, including for purposes of producing or testing the Covid-19 vaccines she was asked to take.

27. Plaintiff Miller's request for a religious exemption was denied in November 2021.

28. After Defendant Mayo told Plaintiff Miller it had denied her request for a religious exemption, Defendant Mayo also instructed Plaintiff Miller: "*Do not distribute, forward, or copy the content of this notification.*"

29. Defendant Mayo created an ad hoc panel to review such exemption requests. As noted above, Plaintiff Miller submitted a request for an exemption, but Defendant Mayo denied nearly every request for religious exemption, with the exception that some were granted, but conditioned upon submission to invasive, supervised weekly testing.

30. As a result of Defendant Mayo's policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those, including Plaintiff Miller, who refused the Covid-19 vaccinations.

31. The denials of the requests for religious exemptions all contained the same boilerplate language:

> "*Thank you for submitting your request for religious exemption. The information you provided was carefully considered. While this may not be the news you were hoping to receive, your religious accommodation has not been approved. Based on the information provided, your request did not meet the criteria for a religious exemption accommodation.*"

32. Defendant Mayo conducted no case-by-case analysis or individualized interactive process to discuss Plaintiff Miller's exemption request or possible accommodation. In response to requests for explanation or information, Defendant Mayo wrote: "HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in the approval/denial decision." Rather than engage in a legitimate interactive process, respect the sincerity of Plaintiff Miller's religious beliefs, or attempt reasonable accommodation, Defendant Mayo used more boilerplate language to justify its pre-determined result:

> "*<u>Generally</u>, denials occur because the requestor has not clearly stated their sincerely held belief, demonstrated it is a sincerely and consistently held belief, and/or clearly defined the conflict between their religious belief and receiving the COVID-19 vaccine.*"

33. Defendant Mayo actually specifically disavowed an individual interactive process by writing: "Specific feedback on individual requests will not be provided, … it is not possible to provide individual feedback."

34. Plaintiff Miller sought further clarification on Defendant Mayo's criteria for determining whether a religious belief constituted a "sincerely held religious belief," and the basis for Defendant Mayo determining that Plaintiff Miller did not have a

8

"sincerely held religious belief," but the Plaintiff Miller was simply given the generalized, identical language in the letters.

35. In its form denial letters, Defendant Mayo announced that it would accept appeals of its uniform denial decisions. "*If you would like to submit additional clarifying information, you may submit a reconsideration request here*." Plaintiff Miller took advantage of that process and submitted additional information. She requested reconsideration of the denial of her request for a religious exemption on November 21, 2021.

36. Following Plaintiff Miller's request for reconsideration, however, Defendant Mayo again issued identical denial letters to Plaintiff Miller and nearly every employee who appealed a denial of a request for a religious exemption to taking the Covid-19 vaccine. The transmittal email messages stated: "*Unfortunately, the additional information you provided did not change the outcome as it did not meet the criteria for a religious accommodation*." Again, no interactive process was used to evaluate the requests for exemptions.

37. Defendant Mayo did not provide information about its process for determining whether the employees sincerely held religious beliefs would be accommodated either.

38. Both Defendant Mayo's original denial of Plaintiff Miller's request for a religious exemption and Defendant Mayo's denial of Plaintiff Miller's request for reconsideration contained this warning at the bottom: "*Do not disseminate, distribute, forward, or copy the content of this notification*."

39. Defendant Mayo staff were further instructed to *"endorse the vaccine or say nothing."*

40. Defendant Mayo terminated Plaintiff Miller' employment on January 3, 2022 based on her refusal to obtain a Covid-19 vaccine.

41. Plaintiff Miller received a Right to Sue letter from the EEOC dated February 23, 2022.

42. Plaintiff Miller submitted good-faith statements of her sincerely-held religious beliefs, with explanations of how her faith constrained her from accepting the Covid-19 vaccination. Defendant Mayo's *ad hoc* panel nevertheless denied Plaintiff Miller's request for an exemption and made no effort to accommodate her request for a religious exemption. Further, Defendant Mayo never considered allowing Plaintiff Miller to be accommodated by simply doing her job in the way she had been doing it for over one and one-half years prior to Defendant Mayo instituting its Vaccine Mandate.

43. The Covid-19 vaccines are being mandated for the employees to be "fully vaccinated," despite the phrase "fully vaccinated" having a definition that has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

44. Defendant Mayo mandated its employees, including Plaintiff Miller, take the Covid-19 vaccine despite accumulating evidence that the vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 when you get it.

10

45. While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the overwhelming majority of people with Covid-19 were vaccinated to one extent or another.

46. The numbers of patients hospitalized because of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

47. Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendant Mayo has done as set forth above.

48. Early on in the Covid-19 pandemic, and before any vaccines were available, Defendant Mayo provided free testing to determine "*how many Mayo Clinic staff have developed antibodies against SARS-Co-V-2.*"

49. Rather than disclosing the results of its determination on the numbers of Defendant Mayo "staff" that "have developed antibodies against SARS-Co-V-2," or disclosing studies on the "duration of immunity after Covid-19," (which some studies have asserted are many times more effective than vaccine immunity), Defendant Mayo has not made public this information and instead issued its Vaccine Mandate.

50. On March 14, 2022, Defendant Mayo suspended its Vaccine Mandate and testing program. As a result, Defendant Mayo's remaining unvaccinated employees are now treated similarly to vaccinated employees.

51. After terminating the Plaintiff Miller, Defendant Mayo suspended weekly testing effective March 14, 2022. This means that those employees (like Plaintiff Miller) who would have had their religious exemptions granted, contingent on weekly testing, and were terminated between January 2022 and March 14, 2022, would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendant Mayo has now determined is unnecessary.

## FIRST CAUSE OF ACTION

### Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964

52. Plaintiff Miller restates and realleges paragraphs 1 through 51 as if fully set-forth herein.

53. Defendant Mayo is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

54. Plaintiff Miller is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

55. Plaintiff Miller has a sincerely held religious belief which prevented her from receiving the vaccine. Plaintiff Miller's beliefs arise because of her Christian beliefs.

56. Plaintiff Miller informed Mayo of the conflict between her religious belief and the Vaccine Mandate.

57. Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id.* § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id.* § 2000e(j).

58. The law prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of Plaintiff Miller's religious beliefs, or whether Plaintiff Miller's exercise of their beliefs is logical or as consistent as Defendant Mayo believes the exercise of those religious beliefs should be.

59. Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

60. In response to Plaintiff Miller's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant Mayo and its ad hoc panel applied a uniform, blanket rule in rejecting nearly all, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

61. Despite the Plaintiff Miller's consistent requests for Defendant Mayo to engage in an interactive process regarding her request for accommodation, Defendant Mayo refused throughout to engage in the interactive process and instead rejected Plaintiff Miller's request for an exemption for identical reasons as other Defendant Mayo employees using an identical form letter.

62. As set forth above, Defendant Mayo could have accommodated Plaintiff Miller's request for a religious exemption without suffering any undue hardship by

13

having her continue to do her job the same as she had done for the last one and one-half years.

63. Defendant Mayo's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

64. Because of Defendant Mayo's unlawful actions, Plaintiff Miller suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### State law religious discrimination claim under MHRA 363A.08

65. Plaintiff Miller restates and realleges paragraphs 1 through 64 as if fully set-forth herein.

66. Minn. Stat. Sec. 363A.01, et seq prohibits discrimination in employment based on religion.

67. Defendant Mayo is an "employer" within the meaning of Minn. Stat. 363A.01.

68. Plaintiff Miller is an "employee" within the meaning of Minn. Stat. 363A.01.

69. Plaintiff Miller has a sincerely held religious belief which prevented her from receiving the Covid-19 vaccine.

70. Plaintiff Miller informed Defendant Mayo of the conflict between her religious belief and the Vaccine Mandate.

71. Minn. Stat. 363A.01 et seq prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

72. Minn. Stat. 363A.01 et seq prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of Plaintiff Miller's religious beliefs, or whether Plaintiff Miller's exercise of their beliefs is logical or as consistent as Defendant Mayo believes the exercise of those religious beliefs should be.

73. In response to the Plaintiff Miller's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant Mayo and its ad hoc panel applied a uniform, blanket rule in rejecting nearly all, in violation of the law on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

74. Despite Plaintiff Miller's request for Defendant Mayo to engage in dialogue, Defendant Mayo refused throughout to engage in the interactive process, and instead rejected Plaintiff Miller for generalized reasons, using an identical form letter.

75. Defendant Mayo's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Minn. Stat. sec. 363A.01 et seq.

76. Because of Defendant Mayo's unlawful actions, Plaintiff Miller has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## THIRD CAUSE OF ACTION

### Discrimination and Failure to Accommodate under the ADA, 42 U.S.C. § 12101 *et seq.*

77. Plaintiff Miller restates and realleges paragraphs 1 through 76 as if fully set-forth herein.

78. Defendant Mayo is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A).

79. Plaintiff Miller is an "employee" within the meaning of 42 U.S.C. § 12111(4).

80. The ADA, at 42 U.S.C. § 12112 (d)(4)(a), prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

81. Defendant Mayo's Vaccine Mandate violated 42 U.S.C. § 12112 (d)(4)(a).

82. As a result of Defendant Mayo's wrongful actions, Plaintiff Miller suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

### Wrongful Discharge - Minnesota Refusal of Treatment Statute.

83. Plaintiff Miller restates and realleges paragraphs 1 through 82 as if fully set-forth herein.

84. Minn. Stat. §12.39 creates a right for individuals "to refuse medical treatment, testing, physical or mental examination, [or] vaccination. . . ." The law further requires that those health care professionals administering vaccination notify the individual of the right to refuse the vaccination. *Id*. §12.39, Subd. 2 (the "Refusal of Treatment" statute).

> "… individuals have a fundamental right to refuse medical treatment, testing, physical or mental examination, vaccination, participation in experimental procedures and protocols, …". Further, "before performing … vaccination of an individual … a health care provider shall notify the individual of the right to refuse the … vaccination, …".

85. Plaintiff Miller is an "individual" who has a "fundamental right" to "refuse medical treatment and "vaccines."

86. Defendant Mayo is a "private entity" and a "health care provider" who is obligated to "notify the individual of the right to refuse vaccinations."

87. The State of Minnesota is no longer under a state-declared "emergency," as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

88. Plaintiff Miller has objected to being required to undergo compulsory medical treatment, including invasive injections, vaccinations, and testing. This refusal is protected by Minn. Stat. §12.39, and constitutes a refusal to engage in conduct contrary to Minnesota Public Policy. As a result of Plaintiff Miller's refusal to accede to Defendant Mayo's imposition of such illegal conditions, Plaintiff Miller has been harassed, suspended, discharged (explicitly or constructively), and had her earned benefits taken away.

89. Defendant Mayo's actions in punishing the Plaintiff Miller for refusing to engage in conduct prohibited by state law and public policy constitutes wrongful discharge. Defendant Mayo admitted in 2021 that vaccinations could not be mandatory and must instead be voluntary. Defendant Mayo changed its policy in October 2021. Subsequently, in March, 2022, Defendant Mayo changed its policy again to no longer require weekly testing for unvaccinated employees.

90. As a result of Defendant Mayo's illegal actions taken against Plaintiff Miller, Plaintiff Miller has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FIFTH CAUSE OF ACTION
## Breach of Contract/Promissory Estoppel

91. Plaintiff Miller restates and realleges paragraphs 1 through 90 above as if fully set-forth herein.

92. Defendant Mayo had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

93. Defendant Mayo wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, *religion,* gender, *age*, national origin, marital status, sexual orientation, veteran's status, *disability*, or status with regard to public assistance." (emphasis added).

18

94. Defendant Mayo's policies and statements created a contract between it and its employees.

95. Defendant Mayo's actions in terminating Plaintiff Miller, discriminating against her on the basis of her religious beliefs, constitutes a breach of that contract.

96. Plaintiff Miller has been damaged by Defendant Mayo's breach of contract.

97. In the alternative, Defendant Mayo's promises to its employees, both written and verbal, created an expectation on which the employees, including Plaintiff Miller, relied to her detriment. Defendant Mayo's promises to its employees, including Plaintiff Miller, should be enforced to avoid injustice.

## JURY DEMAND

Plaintiff Miller demands a trial by jury on all claims and issues for which they have a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Miller above-named prays for judgment in her favor and against Defendant Mayo and for an Order of the Court as follows:

1. Adjudging that Defendant Mayo is liable to Plaintiff Miller for her actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2. Enjoining Defendant Mayo from taking further illegal action against Plaintiff Miller in violation of both state and federal law, and Ordering Defendant Mayo

to take action to restore Plaintiff Miller to her positions they would have enjoyed absent Defendant's illegal conduct;

3. Awarding Plaintiff Miller her costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4. Awarding such other relief as the Court may deem just and equitable.

Dated: May 24, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Plaintiff*